525 So.2d 1326 (1988)
Dr. J.H. LEIGH, et al.
v.
BOARD OF SUPERVISORS OF NESHOBA COUNTY, Mississippi, Individually and in Their Official Capacity.
No. 57735.
Supreme Court of Mississippi.
May 18, 1988.
Ken Turner, Philadelphia, for appellants.
Donald L. Kilgore, J. Max Kilpatrick, Philadelphia, for appellee.
Edward A. Williamson, Philadelphia, for Wallace Cox.
Before DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
On November 28, 1984, a petition was filed with the Neshoba County Board of Supervisors calling upon them to submit a proposition to the voters of Neshoba County regarding the sale of a hospital and nursing home. On a four to one vote the board of supervisors found that the proposition was not within its legal authority and an appeal was taken to the Circuit Court of Neshoba County, Judge Ernest L. Brown, Special Judge, Presiding, and the board's decision was affirmed. As a result, this appeal followed with the following assignments of error:
I. That the lower court erred in holding that the subject petition is a multiple proposition petition; and
II. That the lower court and the Board of Supervisors have failed to comply with Section 19-3-55, Mississippi Code Annotated (1972).
The petition was filed pursuant to Mississippi Code Annotated, Section 19-3-55 (1972), and asked the Neshoba County Board of Supervisors to submit the following proposition to Neshoba County voters:
Should ownership of Neshoba County General Hospital and Neshoba County Nursing Home remain in Neshoba County, and continue to be operated as a *1327 community hospital and nursing home, and not be sold or leased without first submitting the issue to the people by election?
The petition was in response to information that the board had accepted proposals for the sale of Neshoba County General Hospital and Neshoba County Nursing Home.
The petition contained the signatures of over 6,400 registered Neshoba County voters. On April 12, 1985, the board made the following findings:
(1) The proposition submitted contains a matter affecting the entire county;
(2) The proposition submitted contained 25% of the names of the qualified electors of the county as certified by the Clerk of Neshoba County;
(3) The proposition submitted is not a matter within the legal power of the Board of Supervisors.
The third finding was appealed to the Circuit Court of Neshoba County which affirmed the board's findings by written order on May 7, 1986.

I.

DID THE LOWER COURT ERR IN HOLDING THAT THE SUBJECT PETITION IS A MULTIPLE PROPOSITION PETITION?
The trial court found that the proposition submitted to the Board called for the determination of three questions:
1. Whether the ownership of the Neshoba County General Hospital and Neshoba County Nursing Home remain in Neshoba County,
2. Whether it would continue to be operated as a community hospital and nursing home,
3. Whether it would be sold without first submitting the issue to the people by election.
The court found that the petition called for one election to determine whether another would be held to determine if the hospital and nursing home were to be sold. The trial judge employed the rationale of cases dealing with proposed amendments to the Mississippi Constitution wherein it has been noted that "Section 273 of the Constitution provides that whenever an attempt is made to amend the Constitution, that `if more than one amendment shall be submitted at one time, they shall be submitted in such manner and form that the people may vote for each amendment separately' ..." State Ex. rel. Collins v. Jones, 106 Miss. 522, 543, 64 So. 241, 242 (1914). See Power v. Robertson, 130 Miss. 188, 93 So. 769 (1922), and State Ex. Rel. McClurg v. Powell, 77 Miss. 543, 27 So. 927 (1900).
Reasoning from these cases, the trial court, having decided that the petition was multi-propositional, found that the board was eminently correct in holding that they were without authority to grant the petition.
Leigh argues that the rule cited by the trial court does not apply in this case because the petition does not present a multiple proposition. The only question presented by the petition is, "Should the Board of Supervisors be able to sell the Neshoba County Hospital and Nursing Home without first letting the citizens of Neshoba County vote on that issue?"
Furthermore, even if the petition is multi-propositional, Leigh argues that State v. Powell places the petition within the jurisdiction of the board of supervisors when it says that "In order to constitute more than one amendment, the proposition submitted must relate to more than one subject, and have at least two distinct and separate purposes not dependent upon or connected with each other." State v. Powell, 77 Miss. 543, 574, 27 So. 927 (1900) quoting State v. Timme, 54 Wis. 318, 336 11 N.W. 785, 791 (1882).
The board submits that a voter could take a mixture of affirmative and negative positions on the three questions as outlined by the trial court and remain perfectly consistent, and furthermore, the board argues that Dr. Leigh has failed to prove manifest error on the part of the trial court. International Harvester Co. v. Peoples Bank & Trust Co., 402 So.2d 856, 860 (Miss. 1981).
*1328 We are of the opinion that the manifest error doctrine does not apply to a decision from the board of supervisors as the appellants had no access to a jury trial and therefore should not be held to the manifest error standard on this appeal. In S & A Realty Co. v. Hilburn, 249 So.2d 379, 381-382 (Miss. 1971), former Chief Justice Neville Patterson wrote:
It is equally clear, we think, since all of the facts are set out either in the pleading or the exhibits, there being no oral testimony of witnesses, that this Court is in the same position as the trial court in evaluating the facts and that the chancellor may be reversed if he erred in his interpretation thereof, whether manifestly in error or not.
See also, Mississippi State Highway Commission v. Dixie Contractors, 402 So.2d 811, 812 (Miss. 1981).
Therefore, the only question presented by this assignment is whether the petition submitted by Dr. Leigh is in fact multi-propositional. This question is ultimately a factual issue to be decided by this Court. We are of the opinion that the petition presents only one question as submitted by the appellants and that is, "Should the Board of Supervisors be able to sell the Neshoba County Hospital and Nursing Home without first letting the citizens of Neshoba County vote on that issue?" The proposition on its face asks only one question. Furthermore, based on State v. Powell, supra, 77 Miss. at 574, 27 So. 927, the proposition relates to only one subject and one purpose and as such is not faulty under the case law relied on by the court below.
Moreover, petitions for an election are adequate if they substantially comply with the requirements of the statute and are reasonably sufficient to authorize the board of supervisors to take jurisdiction of the matter and make the order for election... . Nor should the standards for them when filed by laymen be higher than those already established by this Court for minutes of boards of supervisors. As to them, it is established that strict legal technicality cannot be required. Stennis v. Board of Supervisors of Clay County, 232 Miss. 212, 227, 98 So.2d 636, 642 (1957).
We, therefore, find that the trial judge was in error when he found that the petition was multi-propositional, and consequently, not within the jurisdiction of the board of supervisors.

II.

DID THE LOWER COURT AND THE BOARD OF SUPERVISORS FAIL TO COMPLY WITH SECTION 19-3-55, MISSISSIPPI CODE ANNOTATED (1972)?
The petition was filed pursuant to Mississippi Code Annotated, Section 19-3-55 (1972), which provides:
Unless otherwise specifically required by law, the board of supervisors of any county shall upon the filing of a petition touching any matter affecting the entire county and over which it has jurisdiction, signed by twenty-five percent of the qualified electors of the county, either pass an order putting said proposition in force and effect or immediately submit the same to a vote of the qualified electors of the county, after giving thirty days' notice of said election, said notice to contain a statement of the proposition to be voted on at said election. If said election shall result in favor of the proposition petitioned for, the board of supervisors, shall pass the necessary order, to put the said proposition in force and effect. In the event the election shall result against the proposition submitted, no other election shall be held on the same, or substantially the same proposition within twelve months of the date of the prior election. This section shall not, however, apply to the creation of taxing districts.
Once the board determined that the matter affected the entire county and that the petition contained the signatures of twenty-five percent (25%) of the qualified voters of Neshoba County, then Section 19-3-55 provides that the Board must either: (1) put *1329 the matter to a vote; or (2) pass an order putting the proposition into effect.
In Gill v. Woods, 226 So.2d 912 (Miss. 1969), this Court said:
Unless there is some law enacted by the legislature to the contrary, the Board of Supervisors must act when twenty-five per cent of the qualified electors of the county file a petition with the Board touching matters affecting the entire county. The Board must either put the proposition sought by the electors into effect, or the Board may submit the proposition to a vote of the qualified electors.
The Board has no discretion except the choice expressed in Section 3018, Mississippi Code 1942 Annotated (1956). When such a petition is filed, it becomes the duty of the Board to immediately determine whether or not (1) the petition contains matter affecting the entire county; (2) whether or not it contains the names of twenty-five per cent of the qualified electors of the county; (3) whether or not it is possible for the county to carry into effect the proposition within the legal power of the Board of Supervisors. If the Board determines the issue in the affirmative, the Board must proceed as the statute directs. If the Board determines that the petition is not sufficient on one of the reasons enumerated above, the Board must make such a determination of the issues of record on its minutes. The Board cannot ignore the petition filed by the citizens of the county. In either case, the Board's judgment must be properly recorded on the minutes of the procedure of the Board in compliance with Section 2886, Mississippi Code 1942 Annotated (Supp. 1968).
Gill v. Woods, 226 So.2d 912, 918 (Miss. 1969).[1]
Because we are of the opinion that the petition presents only one question, the board is required to either hold the election or put the proposition in force and effect.
There is no merit to the board's argument that it cannot legally respond to the petition because the matter is not yet spread on its minutes.
Neither Section 19-3-55 nor Gill v. Woods requires the matter to be spread on the board's minutes in order for the board to act on the petition. Any ruling which would require voters to wait until their governing board takes "official action" before they can petition is impractical and would unnecessarily impede the right of the people to petition.

III.

IS PRIOR ACTION BY A BOARD OF SUPERVISORS IN ACCORDANCE WITH MISSISSIPPI CODE ANNOTATED, § 19-7-3 (SUPP. 1986), A NECESSARY PREREQUISITE TO INITIATION IN ACCORDANCE WITH MISSISSIPPI CODE ANNOTATED, § 19-3-55 (1972), OF A PETITION TOUCHING UPON THE DISPOSAL OF REAL ESTATE BELONGING TO THE COUNTY?
The board argues that action in compliance with Section 19-7-3 regarding disposal of real estate belonging to a county is a prerequisite to any action under § 19-3-55.[2]
Mississippi Code Annotated, § 19-7-3 provides:
In case any of the real estate belonging to the county shall cease to be used for county purposes, the board of supervisors may sell, convey or lease the same on such terms as the board may elect and may, in addition, exchange the same for real estate belonging to any other political subdivision located within the county. In case of a sale on a credit, the county shall have a lien on the same for the purchase money, as against all persons, until paid and may enforce the lien as in such cases provided by law. The deed of conveyance in such cases shall be executed *1330 in the name of the county by the president of the board of supervisors, pursuant to an order of the board entered on its minutes.
Before any lease, deed or conveyance is executed, the board shall publish at least once each week for three (3) consecutive weeks, in a public newspaper of the county in which the land is located, or if no newspaper be published in said county then in a newspaper having general circulation therein, the intention to lease or sell, as the case may be, the county-owned land and to accept sealed competitive bids for the leasing or sale. The board shall thereafter accept bids for the lease or sale and shall award the lease to the highest bidder in the manner provided by law. However, whenever the board of supervisors shall find and determine, by resolution duly and lawfully adopted and spread upon its minutes (a) that any county-owned property is no longer needed for county or related purposes and is not to be used in the operation of the county, (b) that the sale of the property in the manner otherwise provided by law is not necessary or desirable for the financial welfare of the county, and (c) that the use of the county property for the purpose for which it is to be sold, conveyed or leased will promote and foster the development and improvement of the community in which it is located and the civic, social, educational, cultural, moral, economic, or industrial welfare thereof. The board of supervisors of such county shall be authorized and empowered, in its discretion, to sell, convey, lease, or otherwise dispose of same for any of the purposes set forth herein.
Section 19-7-3 clearly applies to real estate belonging to a county which has ceased to be used for county purposes. This statute does not apply to the hospital and nursing home here at issue as they have not ceased to be used for county purposes. Furthermore, Section 19-7-3 governs the procedure to be followed when and if the voters elect that the hospital and nursing home be sold. Section 19-7-3 in no way conflicts with Section 19-3-55 governing petitions. The board of supervisors' argument on this point is without merit.
We are, therefore, of the opinion that the lower court was in error when it held that the petition herein was multi-propositional.
The board of supervisors had jurisdiction and Section 19-3-55 mandated the action that it must take.
This cause is, therefore, reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Section 3018, Mississippi Code Annotated (1942), is now Section 19-3-55.
[2] This argument was apparently made at trial but does not appear in the record. It was not addressed in appellants' initial brief or the circuit court order.